## United States Fidelity & Guaranty Co. v. Lagana

*Spence, Custer, Saylor & Wolfe,* for petitioner.
*Myers, Taylor & Peduzzi,* for respondent.

McDONALD, J., July 24, 1958.—This matter is before the court on a petition for a declaratory judgment to determine whether petitioner, an insurance company, is required to defend and/or pay judgments which might be rendered against respondent, an individual, in two trespass actions wherein he is named as defendant.

Petitioner issued to an unincorporated association known as Sons of Italy, Nuova Loggia Monte Grappa, No. 1507, hereinafter referred to as Lodge, its Owners', Landlords' and Tenants' Policy No. SGL 106068, covering certain premises owned by the lodge and sit-

uate in the Village of Tripoli, Cambria County. While this policy was in force, two members of the lodge, namely, Fred Mastrini and Frank Gatto, sustained bodily injuries on the premises of the insured and have filed separate trespass actions against respondent. Each action alleges he was "the person in charge of the club rooms and hall" and that injuries were the result of his negligence in permitting a dangerous condition to exist, particularly, that the floor and steps of the premises were strewn with paper, napkins, spilled liquids, food particles and the like.

It is admitted for the purposes of this proceeding that respondent was the corresponding secretary, a member of the administrative council, hereinafter referred to as Council, and chairman of the house committee of the lodge.

Section III of the aforesaid insurance policy defines "insured" as follows: "The unqualified word 'Insured' includes the Named Insured and also includes any partner, executive officer, director or stockholder thereof while acting within the scope of his duties as such." We agree with counsel that the terms "partner", "director" and "stockholder" have little or no application to an unincorporated association. Thus petitioner is required to defend respondent and pay judgments which may be rendered only if he was an "executive officer" and acting within the scope of his duties when the alleged negligence occurred.

As corresponding secretary and member of the council, he was acting in a dual executive capacity. The by-laws of the lodge, sections 444-46, set forth the duties for the corresponding secretary, all of which are secretarial in nature. The composition and duties of the council are set forth in sections 434 and 523-26, as amended. Prior to amendment, sections 523-26 provided that the recreational center or club of the lodge

be "governed by an Administrative Committee composed of a President, a Vice-President, a Secretary, a Treasurer, and three Trustees elected annually in the month of December at the regular meeting of the Lodge". In addition, there were provisions for employment of help, purchase of supplies and keeping accounts. After amendment, at a date admittedly prior to the accidents, these sections were consolidated as follows: "The recreational center or club shall be governed by the Council of the Lodge with full power to the officers to appoint the employees and to purchase merchandise and supplies required to insure the proper functioning of the Club. The Council of Lodge may appoint a House Committee of 3 or more members, directly responsible to the Officers of the Lodge and who may be vested with the authority directed by the council."

Thus, the council is the governing body of the recreational center or club with power to appoint a house committee in which certain authority may be vested presumably to implement the management of the club. Since it does not appear in the bylaws or the testimony that the corresponding secretary, or the council or any member thereof individually, is charged with the duties of keeping the property of the recreational center or club in a clean and safe condition, if respondent was acting in either of these capacities when the delict occurred, it would have been beyond the scope of his duties. In such case he would not come within the definition of "insured".

It is argued by plaintiffs in the trespass actions that respondent, as chairman of the house committee, was an executive officer charged with the maintenance of the premises and actually did perform menial chores such as cleaning, repair of furniture and other work as part of his duties. Thus his failure to keep the

premises in a safe and clean condition resulting in injury to plaintiffs was negligence for which he is liable. Petitioner contends as chairman of the house committee he was responsible to the council and as an executive officer of the lodge, cleaning the premises or performing the functions of a janitor were not within the scope of his duties. Therefore, any negligence on his part does not bring him within the provisions of the insuring agreement.

We are confronted with two questions: (1) Was respondent, as chairman of the house committee, an executive officer under the terms of the insuring agreement; (2) if so, was he acting within the scope of his duties when he cleaned the premises and performed the usual functions of a janitor?

The first question presents little difficulty since petitioner admits respondent was acting in an "executive capacity" as chairman of the house committee. There may be some question according to strict legal terminology whether he was an "executive officer" in view of the menial chores which he claims comprised part of his duties. However, the testimony discloses he did supervise the building of an addition to the club, make repairs and was "in charge of the building". He also supervised the work of the janitor, who was hired on his recommendation. We believe, therefore, he was an executive officer both in law and under the terms of the insuring agreement.

The second question presents a more difficult problem. As indicated above, sections 523-26 of the organization bylaws, as amended, provide that the recreational center or club shall "be governed" by the council of the lodge rather than a separate administrative committee elected by the membership as previously. This council, under certain provisions in the bylaws, also governed the fraternal lodge and had

many duties separate and distinct from those concerned with the management of the club, whereas, the former administrative committee was charged only with this latter duty. It is significant that by this change of control, the council is authorized to appoint a "House Committee of 3 or more members, directly responsible to the Officers of the Lodge and who may be vested with the authority decided by the Council". Thus many of the duties which formerly devolved upon the administrative committee could be delegated to the house committee. As will later be seen by the testimony of respondent, the house committee was for all practical purposes in charge of the recreational center or club.

No provision of the bylaws or any action of the council by resolution upon the minutes specifically outlines the duties of the house committee. However, respondent testified to the duties performed in that office from the time he was originally appointed in 1949 until the present, as follows:

"By Mr. Taylor:

"Q. Mr. Lagana, as a member or chairman of the building committee, what is, or what was your understanding, at least, of your duties?

"A. Well, it was just too bad that we don't have it down in writing. Of course in an office like that we don't put every little detail down. I was told that I was in charge of the building, to hire the janitor and to see that the janitor does good work, a good job, and anything that is broken down to make the necessary repairs, if it was an emergency, or report to the committees, and any unusual thing that came up I was to take care of it.

"Q. Had you actually performed those duties?

"A. Oh, thousands of times.

"Q. How is that?

"A. Thousands of times.

"Q. How long a period of time have you been performing that type of duty for the club or lodge?

"A. Well, I would say since I was elected. I felt that that was a responsibility and I took care of it. If glasses were broke, or guys throws cards around, or there's beer spilled on the table or stuff, or a chair broken or something; for instance, up there we held banquets and maybe somebody got on a chair and the chair broke, well I immediately went over and replaced the chair with another chair in its place, or a table broke down one time and I went and moved the table and put another table in its place; or any time there was banquets or anything like that I was responsible for putting the tables up and chairs up and naturally, right after supper we get the whole gang together and take the tables out and clean up for the dance."

Apparently, the council did not object to the performance of work of the nature above indicated in his testimony or restrict him in any way to purely supervisory duties. Respondent, who incidentally was the only member of the house committee when the accidents occurred, was directly responsible to the council and apparently did whatever was necessary, including menial chores, as well as supervisory, in the conduct of the recreational center or club. He was, in effect, acting for the council. Applying the principles of agency which appear to be analogous to the situation here, these duties performed by respondent were acquiesced in by the council, which would be in place of the principal, for a long period of time and with full knowledge of the facts, thus amounting to a ratification at least as to the rights of third parties which might accrue. Since there was long acquiescence in the performance of duties such as cleaning the premises and doing whatever was necessary to conduct the

business of a club, we must conclude the authority to do so was vested in the house committee or respondent who was the only member thereof and had been delegated to him by the council. While he was directly responsible to the council, he also had an obligation to patrons of the premises to maintain it in a safe condition.

There are four important considerations which support the argument of plaintiffs: (1) The amendment to sections 523-26 of the bylaws specifically authorized the council to appoint a house committee vested with authority that is in no way limited by the bylaws. Thus it would appear the amendment contemplated that direct authority and responsibility for management of the recreation center and club would be vested in a separate committee; (2) at the time of the accidents and for a period prior and subsequent thereto, respondent was the only member of the committee. His testimony indicates he was virtual manager of the premises and in charge of the cleaning, as well as maintaining the premises in a safe condition; (3) the supervisory work which he performed, as well as menial chores, were acquiesced in by the council for such a long period of time that we must conclude they were within the scope of his duties as chairman of the house committee; (4) section 533 prohibits officers of the lodge from appointment as employes but excepts the appointment of an officer as a member of the house committee. This indicates that work of the type usually performed by an employe would be within the scope of the duties of a member of the house committee. Taken against the backdrop of all these considerations and the fact that this was a small fraternal organization in which the duties of an executive officer, such as chairman of the house committee, overlap those of any employe, it is our opinion respondent was acting

within the scope of his duties as chairman of the house committee when he attended to the details of cleaning the club and maintaining it in a safe condition for patrons lawfully on the premises.

A determination of the issue here rests entirely on a contractual obligation. A partner of a copartnership, or an officer, and in some few instances a director or stockholder, of a corporation, may be held liable individually for his torts, regardless of whether the delict occurred while acting on behalf of the copartnership or corporation. By the same token, an executive officer of an unincorporated association may also be held individually liable for his torts. The only limitation in this policy, which is also issued to partnerships and corporations, is that he be acting within the scope of his duties. Thus, while the insuring agreement primarily covers the principal insured, whether a copartnership, corporation or unincorporated association, it also, under the definition of "insured", extends coverage to certain classifications of persons who are acting for the principal insured and within the scope of their duties.

Respondent, during his years in the office of chairman of the house committee, was acting for the principal insured, an unincorporated association. Since we have decided he was acting within the scope of his duties, it is our opinion the protection of the policy is extended to him individually, although suit against his principal, either separately or jointly with him, is barred. In effect this may appear to allow that to be done indirectly which cannot be done directly, i.e., suit by a member against an unincorporated association. However the immunity enjoyed by the association is derived from the common law, whereas the obligation of petitioner to those classed as "insured" is contractual. To permit petitioner to avoid its obligation

because respondent was directly responsible to the council acting on behalf of the principal insured would fail to recognize that in the execution of the insuring agreement, it contracted to protect certain classes of persons individually, while acting within the scope of their duties for the principal insured.

We therefore make the following

### Decree

Now, July 24, 1958, after due consideration of the petition, answer and testimony in the above case, it is hereby ordered and decreed that petitioner, United States Fidelity and Guaranty Company, a corporation, is required under the terms of its Owners', Landlords' and Tenants' Policy No. SGL 106068, issued to Sons of Italy Nuova Monte Grappa No. 1507, to defend respondent and/or pay any judgments rendered against him as defendant in two actions in trespass entered in the Court of Common Pleas of Cambria County by, to wit, Fred Mastrini, to no. 365, March term, 1954, and Frank Gatto, to no. 366, March term, 1954.